UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIMELESS PRODUCTION FZ LLC,
Plaintiff,
v.
ALEXANDR VLADIMIROVICH VITVITSKIY,
Defendant.

Case No. 25-cv-06186-SVK

**ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 27

## I. BACKGROUND

Plaintiff Timeless Production FZ LLC ("Plaintiff" or "Timeless") brings this action against Defendant Alexandr Vladimirovic Vitvitskiy ("Defendant" or "Vitvitskiy") for copyright infringement and related claims. *See* Dkt. 1 ("Complaint"). Plaintiff is a producer, editor, and publisher of audiovisual content, including videos, featured on the "Tekniq" YouTube channel. Dkt. 1 ¶ 1. Plaintiff owns registered copyrights to its content. *Id.* ¶¶ 1, 23 and Ex. A. Defendant Vitvitskiy is an individual residing in Ukraine who manages the following YouTube channels: "MAD LAB," "Trending Machine," "Vidéos Pépites," "EL LOQUERO," "미친놈들 대방출" (which Plaintiff claims translates to "Crazy guys released" in English), "EMOTIONSFABRIK," "ハチャメチャ空間" (which Plaintiff claims translates to "Crazy Space" in English), and "ZONA INSANA." *Id.* ¶ 2. Plaintiff alleges that Vitvitskiy and the Doe Defendants "have systematically reproduced, copied, displayed, and distributed Plaintiff's copyrighted videos without authorization on the Defendants' YouTube channels." *Id.* ¶ 24. Plaintiff further alleges that Doe Defendants 1-10 "are believed to have participated in, facilitated, or contributed to the infringing conduct." *Id.*

Plaintiff alleges that after it issued Digital Millenium Copyright Act ("DMCA") takedown

notices, Defendants submitted DMCA counter-notices that misrepresented the ownership of Plaintiff's copyrighted works and claimed the accused videos as Defendants' own original content. *Id.* ¶ 26.

The Clerk of the Court issued the summons on July 30, 2025. Dkt. 6. The Court granted Plaintiff's administrative motion for alternative service on January 29, 2026, thereby permitting Plaintiff to serve Vitvitskiy by email. Dkt. 17. On February 3, 2026, Plaintiff filed a proof of email service on Vitvitskiy pursuant to the Court's order authorizing such service. Dkt. 18. After Vitvitskiy failed to appear or respond to the Complaint and Summons, Plaintiff filed a Request for Entry of Default on February 26, 2026. Dkt. 22. The Clerk of Court entered default against Vitvitskiy on April 30, 2026. Dkt. 23. Now before the Court is Plaintiff's Motion for Default Judgment against Vitvitskiy. Dkt. 27. The motion is suitable for resolution without oral argument. Civil L.R. 7-1(b).

As discussed below, the Court **DENIES** Plaintiff's motion for default judgment against Defendant Vitvitskiy because: (1) Plaintiff has not provided evidence or analysis as to the Court's personal jurisdiction over Vitvitskiy; (2) Plaintiff has not demonstrated the merits or sufficiency of any claim in the Complaint and has not shown how the other *Eitel* factors are satisfied; and (3) Plaintiff has not shown that it is entitled to the relief it seeks by way of the motion for default judgment. Denial of the motion for default judgment is **WITHOUT PREJUDICE** to Plaintiff filing an amended complaint and/or renewed motion for default judgment if it has additional evidence to address the deficiencies identified in this Order.

## II. LEGAL STANDARD

When a party seeks default judgment against another "who has failed to plead or otherwise defend [an action], a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Before entering default judgment, the Court must also assess the adequacy of the service of process on the party against whom default is requested. *See Trustees of ILWU-PMA Pension Plan v. Coates*, No. 11-cv-03998-EMC, 2013 WL 556800, at *4 (N.D. Cal. Feb. 12, 2013). After reviewing service of process and jurisdiction, the Court may in its discretion enter a default judgement after entry of

default. Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

In evaluating a motion for default judgment, "the court takes the factual allegations in the complaint as true, except those relating to the amount of damages." *BBK Tobacco & Foods, LLP v. Aims Grp. USA Corp.*, 723 F. Supp. 3d 973, 981 (D. Nev. 2024) (citing *TeleVideo Sys.*, 826 F.2d at 917-18). To determine whether default judgment is appropriate, courts consider seven factors set forth by the Ninth Circuit: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy under the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## III. DISCUSSION

### A. Subject Matter Jurisdiction and Personal Jurisdiction

When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has the affirmative duty to determine whether it has jurisdiction over the subject matter and the parties. *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1021 (N.D. Cal. 2015) (citing *In re Tuli,* 172 F.3d 707, 712 (9th Cir.1999)).

The Court has subject matter jurisdiction over this action by way of federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Specifically, the Complaint contains a claim for copyright infringement and other claims under federal law. *See, e.g.,* Dkt. 1 ¶¶ 30-41; *see also Automattic*, 82 F. Supp. 3d at 1021 (holding that subject matter jurisdiction was proper under 28 U.S.C. § 1331 because plaintiffs' claim arose under the DMCA).

Plaintiff alleges in the Complaint that Vitvitskiy is subject to personal jurisdiction here for two reasons: (1) he has purposefully directed infringing activities toward the United States and engaged in intentional and systematic copyright violations that have caused direct and foreseeable harm to Plaintiff" because his YouTube channels, which "host[] and monetize the infringing content, are accessible globally, including in this judicial district, and generate[] revenue from U.S.-based viewers"; and (2) pursuant to 17 U.S.C. § 512(g)(3)(D), Vitvitskiy expressly consented

United States District Court
Northern District of California

to the jurisdiction of U.S. federal courts by submitting DMCA counter-notifications to YouTube, which can be found in this judicial district. *Id.* ¶¶ 165-17. However, Plaintiff's motion for default judgment does not address whether this Court has personal jurisdiction over Vitvitskiy. *See* Dkt. 27-1. In any renewed motion for default judgment, Plaintiff must provide evidence and analysis demonstrating that this Court has personal jurisdiction over Vitvitskiy because, for example, he purposefully directed his activities and/or consented to personal jurisdiction here. *See generally Automattic*, 82 F. Supp. 3d at 1021-1025. Plaintiff, which alleges that it is "a limited liability company registered in the United Arab Emirates" (Dkt. 1 ¶ 7), must also specifically address whether it has any connection to California and what, if any, effect that fact has on this Court's personal jurisdiction over Vitvitskiy. *See Automattic*, 82 F. Supp. 3d at 1025 (characterizing *Doe v. Geller*, 533 F. Supp. 2d 996, 1001 (N.D. Cal. 2008), as "declin[ing] to exercise personal jurisdiction over the [foreign] defendants because the plaintiffs did not sufficiently allege how the act of removing the video in California by YouTube, not a party to the dispute, demonstrated injury to plaintiff in California rather than in plaintiff's residence state of Pennsylvania").

### B. Defendant was Properly Served with Process

For the reasons discussed in the Court's January 29, 2026 order, it authorized Plaintiff to serve the Summons and Complaint on Defendant by email. Dkt. 17. Plaintiff's certificate of service indicates that on February 2, 2026, it served the Summons and Complaint upon Defendant by email as authorized by the Court. Dkt. 18. Accordingly, service is adequate under the federal rules.

### C. The *Eitel* Factors Do Not Support Entry of Default Judgment

The Court next considers the *Eitel* factors and concludes that entry of default judgment is not appropriate based on the record currently before the Court.

#### 1. *Eitel* Factors 2 and 3: The Merits of Plaintiff's Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors require the Court to consider the merits of the plaintiff's claims and the sufficiency of the Complaint. For this review, the court takes a Complaint's well-

plead factual allegations as true, "except those relating to the amount of damages." *BBK Tobacco & Foods*, 723 F. Supp. 3d at 981 (citing *TeleVideo Sys.*, 826 F.2d at 917-18). The Complaint contains the following causes of action: (1) direct copyright infringement under 17 U.S.C. § 501; (2) falsification of copyright management information in violation of 17 U.S.C. § 1202(a); (3) removal and/or alteration of copyright management information in violation of 17 U.S.C. § 1202(b); (4) public display right infringement under 17 U.S.C. § 106(5); (5) unfair competition; (6) willful copyright infringement under 17 U.S.C. § 504(c); and (7) misrepresentation under 17 U.S.C. § 512(f). Dkt. 1.[1]

In the motion for default judgment, Plaintiff addresses only the sufficiency of the last claim (Count VII), arguing that it has sufficiently alleged a claim under 17 U.S.C. § 512(f). Dkt. 27-1 at 5-6. Section 512(c) of the DMCA provides a detailed procedure through which a copyright owner may request removal of infringing content from a web-publishing platform. *Executive Lens LLC v. Rapkin*, 824 F. Supp. 3d 965, 967-68 (N.D. Cal. 2026) (citing *Automattic*, 82 F. Supp. 3d at 1016). If a copyright owner believes in good faith that content is infringing, the owner may send a "takedown notice" to the service provider pursuant to § 512(c)(3), and the service provider then must remove or disable access to the material "expeditiously" or face infringement liability itself. 17 U.S.C. §§ 512(c)(1)(C), (c)(3). A service provider must also give the user an opportunity to respond to a takedown by sending a "counter notification." 17 U.S.C. § 512(g). When a valid counter notification is received, the service provider must then advise the copyright holder of the response and must restore the content "not less than 10, nor more than 14 business days" thereafter, unless the service provider is given notice that the copyright holder has filed an infringement lawsuit in court against the user. 17 U.S.C. § 512(g)(2)(B)–(C).

The DMCA also creates liability for individuals who abuse the takedown notice and counter notification system. 17 U.S.C. § 512(f). Section 512(f) provides that any person who makes knowing, material misrepresentations in filing a DMCA takedown notice or counter notification "shall be liable for any damages, including costs and attorneys' fees, incurred by the

---

[1] This list of causes of action is taken from the substantive allegations of the Complaint, not the caption of the document.

alleged infringer ... or by a service provider[.]" *Id.*

Plaintiff argues that the Complaint sufficiently states a claim that Defendant Vitvitskiy submitted fraudulent DCMA counter-notices that caused YouTube to maintain Defendant's improper infringements of Plaintiff's intellectual property. Dkt. 27-1 at 5-6. Even taking the non-damages allegations of the Complaint as true, however, the Court concludes that they are not sufficient to state a claim that Defendant submitted fraudulent DMCA counter-notices. The Complaint alleges that Plaintiff Timeless Production FZ LLC is the sole owner of the copyrights in the "Copyrighted Works" that are the subject of this action, which are identified in Exhibit A to the Complaint. Dkt. 1 ¶ 8. Exhibit A does not specifically identify the copyright owner, and Plaintiff has not filed copies of the copyright registrations. However, even if Timeless Production is the copyright owner, it is not identified as such in all of the takedown notices or any of the counter-notices attached to the Complaint. *See* Ex. C to Dkt. 1 (Counter-notices); Ex. D to Dkt. 1 (corrected version at Dkt. 7-1) (DMCA Takedown Confirmations). A number of the takedown notices identify the copyright owner as "We Protect Your Content" and the legal name of the "Authorized Representative" as "Kenneth Silvers." *See, e.g.,* Dkt. 7-1 at PDF pp. 2, 5, 7, 10, 13, 15, 18, 21, 23. None of the materials submitted with the Complaint or with Plaintiff's motion for default judgment explain or provide evidence concerning the relationship, if any, between Plaintiff Timeless Production and We Protect Your Content or Mr. Silvers. *See generally* Dkt. 1, 27-1. Moreover, Plaintiff has not provided information connecting each copyrighted work to a corresponding takedown notice and counter-notice. *See id.*

Section 512(f) authorizes the "copyright owner or copyright owner's authorized licensee" to obtain damages for material misrepresentations by the alleged infringer to the online provider. 17 U.S.C. § 512(f). Because the record does not establish that the copyright owner or any authorized licensee sent the takedown notices at issue, Plaintiff has not demonstrated it has standing to bring a claim under section 512(f). *See Viral DRM LLC v. Lietucheva*, No. 3:23-CV-04300-JSC, 2025 WL 822689, at *3–4 (N.D. Cal. Mar. 14, 2025).

Accordingly, the second and third *Eitel* factors weigh against default judgment as to Count VII. Plaintiff's motion for default judgment does not address the other claims in the Complaint.

Therefore, on the record before the Court, Plaintiff has failed to show that the second and third *Eitel* factors support default judgment as to any of its claims.

**2. Other *Eitel* Factors**

Plaintiff's failure to show that the Complaint is sufficient and meritorious leaves open the possibility of disputes concerning material facts (*Eitel* factor 5) and therefore weighs against entry of default judgment. Other *Eitel* factors also lead the Court to conclude that default judgment should be denied on the record as it now stands. Plaintiff will not be prejudiced by denial of its motion for default judgment (*Eitel* factor 1) because it can seek to amend its complaint or provide additional evidence, if available, to address the deficiencies identified in this Order. The sum of money at stake (*Eitel* factor 4)—at least $1,500,000.00—is substantial. The policy favoring decisions on the merits (*Eitel* factor 7) also weighs against entering default judgment. Although there is no evidence that Defendant's default resulted from excusable neglect (*Eitel* factor 6), this consideration does not outweigh the other *Eitel* factors, which weigh conclusively in favor of denying Plaintiff's motion for default judgment.

**D. Plaintiff Has Not Shown it is Entitled to the Relief Sought**

Even if Plaintiff had not failed to demonstrate the sufficiency of the Complaint and the merits of any of its claims, the Court would nevertheless deny the motion for default judgment because Plaintiff has failed to make a sufficient showing that is entitled to the relief sought by way of default judgment.

When a defendant fails to defend an action, the Federal Rules of Civil Procedure limit recovery of damages to the amount pleaded on the face of the complaint. *See, e.g.*, *U.A. Loc. 393 Health & Welfare Tr. Fund v. Cool Tech Mech., Inc.*, No. 24-cv-02762-SVK, 2025 WL 2094012, at *4 (N.D. Cal. June 3, 2025), *report and recommendation adopted,* 2025 WL 2094001 (N.D. Cal. July 17, 2025). Moreover, the Court does not take the allegations of damages as true but evaluates the proof submitted by Plaintiff. *See BBK Tobacco & Foods*, 723 F. Supp. 3d at 987 (D. Nev. 2024).

Here, the Complaint seeks various damages and equitable relief, but as discussed in section III.C.1. above, Plaintiff's motion for default judgment only addresses one of the claims made in



United States District Court
Northern District of California

the Complaint: the claim for violation of 17 U.S.C. § 512(f). *See* Dkt. 27-1. That section provides that any person who makes knowing, material misrepresentations in filing a DMCA takedown notice or counter-notification "shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer ... or by a service provider[.]" 17 U.S.C. § 512(f). "The use of 'any damages' suggests strongly Congressional intent that recovery be available for damages even if they do not amount to [] substantial economic damages." *Lenz v. Universal Music Corp.*, No. C 07-3783 JF, 2010 WL 702466, at *10 (N.D. Cal. Feb. 25, 2010); *see also Viral DRM,* 2025 WL 834498, at *4. However, "neither the statutory language nor the statutory goal of deterrence justifies recovery for all damages that occur as a 'but for' result of the misrepresentation." *Id.* "A fair reading of the statute, the legislative history, and similar statutory language indicates that a § 512(f) plaintiff's damages must be proximately caused by the *misrepresentation to the service provider and the service provider's reliance on the misrepresentation*." *Lenz*, 2010 WL 702466, at *10 (emphasis in original). Accordingly, upon a specific evidentiary showing, courts have awarded damages under § 512(f) for items such as employee time and resources expended in dealing with a DMCA notice. *See, e.g., Automattic*, 82 F. Supp. 3d at 1029.

Here, however, Plaintiff has presented no evidence of what, if any, damages it suffered as a result of Defendant Vitvitskiy's allegedly false counter-notifications. Instead, the declaration of Plaintiff's counsel submitted in support of the motion for default judgment simply asserts an entitlement to the following damages: (1) statutory damages under 17 U.S.C. § 504(c) of "up to $150,000.00 per willful infringement"; (2) statutory damages under 17 U.S.C. § 1203(c)(3)(B) of up to $25,000.00 per violation of § 1202(b); and (3) "damages totaling $1,500,000.00, including an award of prejudgment and post-judgment interest." Dkt. 27-2. Therefore, Plaintiff has failed to show it has suffered any harm "as a result of" Vitvitskiy's allegedly false counter-notifications that would be recoverable under 17 U.S.C. § 512(f) and has failed to attempt to quantify any such harm. *See Viral DRM*, 2025 WL 834498, at *4; *see also Automattic*, 82 F. Supp. 3d at 1030.

Counsel's declaration also asserts that Plaintiff is entitled to an award of "full costs and reasonable attorney's fees under 17 U.S.C. §§ 505 and 1203" but provides no statement or

evidence of the amount of those items. *See* Dkt. 27-2 ¶¶ 8-11. "To determine a reasonable award of attorneys' fees, courts employ the 'lodestar' figure, which is calculated by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Automattic*, 82 F. Supp. 3d at 1032. Plaintiff has not provided any evidence on these elements.

Counsel's declaration also states that Plaintiff is entitled to injunctive relief as follows: (1) an order permanently enjoining Defendant from copying, distributing, or displaying Plaintiff's copyrighted works without authorization and order the removal of all infringing content; and (2) an order requiring Defendant to destroy all infringing copies and materials under 17 U.S.C. § 503. Dkt. 27-2 ¶¶ 12-13 Plaintiff has not demonstrated that 17 U.S.C. § 512(f)—the only cause of action discussed in its motion for default judgment—entitles it to this type of injunctive relief.

Accordingly, Plaintiff has failed to meet its burden of proving damages or other remedies, and its motion for entry of default judgment fails for that reason as well.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for default judgment. If it can do so in accordance with the standards of Federal Rule of Civil Procedure 11, by **November 12, 2026,** Plaintiff may file an amended complaint and/or renewed motion for default judgment that addresses the deficiencies identified in this Order.

**SO ORDERED.**

Dated: October 13, 2026



SUSAN VAN KEULEN
United States Magistrate Judge